UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JONATHAN TERCERO YANES | 18-cr-10450-MLW |

**JONATHAN TERCERO YANES' MOTION TO EXCLUDE
ALLEGED ADMISSIONS OF MS-13 MEMBERSHIP**

Jonathan Tercero Yanes, the defendant in the above-captioned matter, respectfully moves this Honorable Court to exclude all alleged admissions of his membership in MS-13. In its discovery, the Government provided reports wherein officers attribute to Mr. Tercero Yanes two statements—one from June 12, 2018, and the second from July 20, 2018—both of which admit that Mr. Tercero Yanes is a member of MS-13. Because Mr. Tercero Yanes never actually made those statements, they are not statements by a party opponent. *See* Fed. R. Evid. 801(d)(2). These statements are also inadmissible as being substantially more prejudicial than probative because Mr. Tercero Yanes did not make those statements and because whatever statements he did make must have been lost in translation. *See* Fed. R. Evid. 403. Finally, these statements should not be admissible because law enforcement obtained the purported July 20 statements after an illegal seizure in violation of Mr. Tercero Yanes' Fourth Amendment rights. For these reasons and the reasons articulated below, the Court should exclude these alleged admissions from evidence.

**F**ACTS

In its RICO prosecution, the Government accuses Jonathan Tercero Yanes of being a member of MS-13 and seeks to prove his membership in the group. In discovery, the Government disclosed reports pertaining to interactions between law enforcement and Mr. Tercero Yanes on June 12, 2018, and July 20, 2018. *See* Memo to Tercero Yanes' A-File re: Gang Affiliation, attached as Exhibit 1; *see also* FBI 302 Report re: Town Line Motel Incident, attached as Exhibit 2. These reports seem to suggest that Mr. Tercero Yanes verbally admitted to being a member of MS-13, even though the same reports also suggest the impossibility of him making such admissions.

On June 12, 2018, Officers Holmes and Lunbohm were patrolling East Boston to combat the "violence in the East Boston area between MS-13 members and members of the 18th St Gang." *See* Exhibit 1 at 12-18. They slowed to speak to one "known MS-13 member"—identified as Josue Rodas. *Id.* at 18. Mr. Rodas walked away from that conversation, and the officers circled the block in their vehicle. *Id.* The officers stopped to ask "a group of unknown Hispanic males" if they "needed anything." *Id.* In response to this inquiry, one of these males approached the police car and "accused Rodas and the two people walking with him of saying 'we're gonna fuck you up. MS-13 for life. We're MS, who are you.'" *Id.* Despite being a "Hispanic male" himself, the witness's most specific description of those making the threats was merely "Hispanic" and "male." *Id.* The majority of all people in East Boston are Hispanic, and over 10,000 of them are Hispanic males.[1] Officers began to look for Mr. Rodas and company in the

---

[1] *East Boston Data Profile: Population Demographics*, Department of Neighborhood Development.

area, soon spotting Mr. Rodas walking with Mr. Tercero Yanes. *See* Exhibit 1 at 18. Mr. Rodas was the only one positively identified by the complaining witness, but officers declined to arrest him, and arrested Mr. Tercero Yanes instead. *Id.*

A little over one month later, on July 20, 2018, other law enforcement officers encountered Mr. Tercero Yanes. *See* Exhibit 2; *see also* Exhibit 1 at 4-7. While parked in the lot of the Town Line Motel in Malden, officers surreptitiously observed and photographed four young men walking into the basketball court of the hotel. *See* Exhibit 2 at 17. The officers wrote that the jersey worn by then-juvenile Geovani Romero, "clearly stated MS 13," citing this observation from a distance as the impetus for their investigation. *Id.* The officers then ran the plates of one of the few vehicles visible in the pictures, which returned results for "Erik Alberto Lopez, [who] had an extensive criminal history to include firearm charges." *Id.* The officers continued their investigation in the hotel management office, and discovered that the hotel was in violation of a civilly-enforced ordinance that requires an owner or operator of a hotel to ensure that occupants of the hotel present identification. *Id.*; M.C.C. 6.08.050. Hotel management told the officers that they were unaware of the ordinance, which sets the standards for hotel licensure and operation. *Id.*; M.C.C. 6.08.050.

The four officers waited for the youths to begin walking "back towards the room" before they each left their police cars to stop the group and question them. *See* Exhibit 2 at 17. Noting that only Lopez spoke English, and not listing any foreign language skills of their own, the officers described their conversation with the four

---

https://www.cityofboston.gov/images_documents/East_Boston_Planning_District_Profile_tcm3-12989.pdf (last accessed Sept. 30, 2020)

young men: after explaining the ordinance violation to the youths, the four officers demanded they present identification, after which "all four confirmed that they [were] active members of MS-13 specifically to the 'Psycho' clique." *Id*. The officers retained Mr. Tercero Yanes' identification long enough to take a photograph and write down his DOB and area of residence to include in the report. *See* Photo of Tercero Yanes' Employment Authorization Card, attached hereto as Exhibit 3. The report maintains that the young men "allowed" the officers to photograph them "for intelligence purposes" despite the deep linguistic divide. *See* Exhibit 2 at 17. The individual photos of the three youths who did not speak English are included in the report but there appears to be no corresponding photo of Lopez. *See* Exhibit 1 at 9-11; *see also* Exhibit 2 at 12-15. Homeland Security characterized this encounter as proof that Mr. Tercero Yanes "self-admitted being a member of the Syko (Psycho) Loco Salvatrucha (SLS) clique of the Mara Salvatrucha (MS-13) gang to the Malden Police Department (MPD)," without regard to the extreme language barrier presented by Mr. Tercero Yanes' inability to speak English. *See* Exhibit 1 at 2.

On November 28, 2018, the federal government charged Mr. Tercero Yanes via indictment with RICO conspiracy violations of federal law based on his alleged membership in MS-13. Docket Entry #11.

## ARGUMENT

I.  **Tercero Yanes did not make the statements, which therefore cannot be admitted as statements by a party opponent.**

Mr. Tercero Yanes' purported statements cannot be statements by a party

opponent because he never made them. Statements made or adopted by a party opponent are not hearsay and are therefore admissible. Fed. R. Evid. 801(d)(2)(A), (B). However, a statement that was never made or adopted by the party is inadmissible hearsay. *Id.*; Fed. R. Evid. 802. Here, Mr. Tercero Yanes did not make the purported admissions of June 12, 2018, and July 20, 2018, and the Court should therefore not permit their admission as statements by a party opponent.

With regard to the June 12 statement, the Government claims that Mr. Tercero Yanes was walking in a group where someone was yelling "we're gonna fuck you up. MS-13 for life. We're MS, who are you." *See* Exhibit 1 at 2,4, and 12-18. But the Government's report does not show that Mr. Tercero Yanes was the declarant. *Id.* The report recounts that officers were patrolling an area in East Boston when they pulled up beside a Mr. Josue Rodas and engaged him in conversation. *Id.* at 18. After he walked away, they continued to drive around the area and slowed alongside "a group of unknown Hispanic males and asked if they needed anything." *Id.* In response to this police inquiry, one man told them that Mr. Rodas and two other males were yelling "MS-13 for life. We're MS, who are you." *Id.* He identified Mr. Rodas by appearance, as he had just seen officers speaking to Mr. Rodas alone minutes before. *Id.* Based on this account, the officers canvassed the area, and found Mr. Rodas and "an unidentified Hispanic male," later identified as Mr. Tercero Yanes, walking around. *Id.* Officers stopped and frisked them, and ultimately arrested Mr. Tercero Yanes and released Mr. Rodas. *Id.* Notably, no witness ever positively identified Mr. Tercero Yanes as one of the males yelling "MS-13 for life. We're MS, who are you."*Id.* Mr. Tercero Yanes fits the

description given—"a Hispanic male"—but so does each of the more than ten thousand Hispanic males in East Boston.[2] Although the officers stopped Mr. Rodas with Mr. Tercero Yanes not long after the alleged incident, they had also already stopped Mr. Rodas previously, at which point Mr. Rodas had been alone. *See* Exhibit 1 at 18. For Mr. Tercero Yanes to be one of the males with Mr. Rodas claiming to be members of MS-13, Mr. Tercero Yanes would have needed to be at the scene with Mr. Rodas, leave the scene without Mr. Rodas and without detection by law enforcement, and then meet up with Mr. Rodas nearby later when law enforcement catches up to Mr. Rodas. The vaporous connection between Mr. Tercero Yanes and the statement attributed to him thus belies the notion that it is a statement by a party opponent.

The connection between the alleged July 20 admission and Mr. Tercero Yanes is weaker still. *See* Exhibit 1 at 2-11; *see also* Exhibit 2. A Malden Police report describes the incident and lists four individuals, including "Jonathan Tercero Yanes," as being involved. *See* Exhibit 1 at 7-8; *see also* Exhibit 2 at 2-17. On that evening, officers interacted with those four individuals, and they identified only one of them as an English speaker. *Id.* Yet somehow, the officers also claim that "all four confirmed that they are active members of MS-13 specifically to the 'Psycho' clique." *Id.* The report gives no indication that the officers could effectively communicate with Mr. Tercero Yanes, who the report notes cannot speak English. There is no indication that officers used an interpreter, nor is there any indication that the officers were able to identify a language that Mr. Tercero Yanes speaks. The officers acknowledge that Erik Alberto Lopez is the only one of the four who could speak English, but the report gives no

---

[2] *See* note 1.

6

indication that Lopez was asked to translate—or could capably translate—for each of the others. *Id.*

Based on the narrative in the report, Mr. Tercero Yanes can at best be fairly said to have not denied in English the accusation, also in English, that he was an "active member of MS-13 specifically in the 'Psycho' clique." *See* Exhibit 1 at 7-8; *see also* Exhibit 2 at 2-17. The conduct attributed to Mr. Tercero Yanes is a far cry from the explicit "self-admission" the Government claims he made in its Verified Gang Affiliation letter. *See* Exhibit 1 at 2. Because there is simply no credible evidence that Mr. Tercero Yanes in fact made the statement himself, it is inadmissible hearsay and should be excluded.

**II.     These purported statements are substantially more prejudicial than probative because there are serious questions as to whether Tercero Yanes even made them.**

The Court should also exclude the purported June 12 and July 20 admissions because the unfair prejudice of admitting them substantially outweighs the negligible probative value they may possess. Under Federal Rule of Evidence 403, a court must exclude a statement if the unfair prejudice created by its admission into evidence outweighs its probative value. Fed. R. Evid. 403. Where an officer relays a statement made by a foreign-language speaker, the officer's lack of proficiency in that foreign language can create a reliability issue that makes the statement unfairly prejudicial under Rule 403. *United States v. Larrahondo*, 885 F. Supp. 2d 209, 220 (D.D.C. 2012) ("One could imagine circumstances in which an agent's language proficiency was so poor that his account of a post-arrest conversation would have limited or even no probative value."). As explained above but also in more detail below, the June 12 and July 20

7

statements are patently unreliable because it is unlikely that Mr. Tercero Yanes made the statements and it is even less likely that officers accurately understood any statements that Mr. Tercero Yanes did make due to language barriers.

     First, the statements are wildly prejudicial—assuming their veracity, the purported admissions establish Mr. Tercero Yanes' membership in MS-13. What makes these statements *unfairly* prejudicial is that Mr. Tercero Yanes likely never made them. As explained above, there is no direct evidence that Mr. Tercero Yanes was the Hispanic male who uttered the June 12 statement, and there is no indication that the Malden Officers correctly understood any statements that Mr. Tercero Yanes may have made, whether MS-13 related or not. *See* Exhibit 1 at 7-8, 18; *see also* Exhibit 2 at 17. Mr. Tercero Yanes' inability to speak English is apparent and acknowledged by the officers. *See* Exhibit 2 at 17. Yet the reports do not indicate that the police used any interpreter or otherwise had the ability to speak with Mr. Tercero Yanes in his native tongue. In fact, the reports do not even identify what language, if any, the officers could use to communicate with Mr. Tercero Yanes, and who, if anyone, assisted in their efforts to communicate. For example, there is no indication that the officers spoke Spanish; there is is no indication that Lopez, who could speak English, translated or interpreted for them; there is no indication that the officers called another officer to translate or interpret, or even a translator or interpreter to help relay their demands to the non-English speakers in the group. There is no way to know the content of Mr. Tercero Yanes' statements if the listeners and report author did not speak the language in which he relayed the statement.

Other statements in the reports also suggest the existence of a serious language barrier. For example, the report claims that the four men—including Mr. Tercero Yanes and Lopez—that officers interacted with on July 20 "allowed" officers to take their photos. *See* Exhibit 1 at 7-8, *see also* Exhibit 2 at 17. Yet Lopez's photo is not among those individual photos the officers claim they obtained consent to take. *See* Exhibit 1 at 5-11, *see also* Exhibit 2. The lack of this photo in the report suggests that Lopez, the only English speaker, declined to be individually photographed by police because he understood what the officers were asking. This raises an inference that the other three, unable to speak English, "allowed" the officers to take their photographs as a submission to a show of authority rather than knowing consent to an understood request to photograph them. *See* Exhibit 1 at 7-8, *see also* Exhibit 2 at 17. This evidence of a language barrier renders the statements attributed to Mr. Tercero Yanes so inherently unreliable that to admit them into evidence would be tantamount to admitting a complete fabrication into evidence and attributing it to Mr. Tercero Yanes. The Court should therefore exclude the statements from evidence.

**III.     The purported July 20, 2018 statement was also the product of an illegal stop and should be suppressed.**

The Court should also suppress the purported July 20, 2018 statement because officers obtained it as fruits of an illegal seizure. In order to stop a person for investigatory purposes without a warrant, police officers must be able to state "specific, articulable facts" in support of a reasonable suspicion that the person stopped "may be connected to the commission of a particular crime." *United States v. Lee*, 317 F.3d 26, 31

(1st Cir. 2003), citing *Terry v. Ohio*, 392 U.S. 1, 21, (1968). Conducting such a seizure absent reasonable suspicion violates the Fourth Amendment. *See Terry*, 392 U.S. at 21. Depriving a suspect of his or her identification can constitute a seizure because it "effectively deprive[s] [a suspect] of the practical ability to terminate the questioning and leave." *United States v. Campbell*, 843 F.2d 1089, 1093 (8th Cir. 1988) (citing *Florida v. Royer*, 460 U.S. 491, 501 (1983); *United States v. Thompson*, 712 F.2d 1356, 1359 (11th Cir. 1983). *Accord United States v. Miller*, 589 F.2d 1117, 1127 (1st Cir. 1978) ("Appellant could not lawfully operate his vehicle without those papers. He was not free to go.").

Here, a seizure occurred when Malden Police officers took Mr. Tercero Yanes' identification—a work permit. *See* Exhibit 3; *see also* Exhibit 2 at 17. At that point, four officers had approached Mr. Tercero Yanes and the three others with him. *See* Exhibit 1 at 7-8; *see also* Exhibit 2 at 17. The officers had already started questioning them, even though of the four young men only Lopez could understand English. *Id.* The officers made no indication that Mr. Tercero Yanes and the others were free to leave, and accused them of violating a city ordinance. *Id.* The officers also took several pictures of them. *Id.* On top of all of that, the officers took their identifications. *Cf. Commonwealth v. Schiller*, 377 Mass. 10, 13, 384 N.E.2d 624, 626 (1979) (noting under Massachusetts law, an officer cannot simply compel someone to provide his or her driver's license without more). Given these circumstances, a reasonable person would not have felt free to leave, particularly if that person could not understand what the accusers, multiple uniformed police officers, were saying in the first place. There was therefore a constitutional seizure.

The officers lacked reasonable suspicion to effectuate this seizure. Here, the officers apparently predicated their stop on the purported violation of a city ordinance requiring renters of a hotel room to provide suitable identification to the hotel. *See* Exhibit 1 at 7-8; *see also* Exhibit 2 at 17; *see also See* City of Malden, Municipal Code § 6.08.050.D. Even so, the Malden Police never cited Mr. Tercero Yanes for the purported violation, likely because Mr. Tercero Yanes and the others that the officers stopped never violated the ordinance. *Id.*

The language of the ordinance makes it clear that the ordinance only governs the conduct of the owner of the hotel, not the conduct of the guests. The relevant section states that "[t]he owner or operator of a hotel or motel" must obtain suitable identification for each of its guests before renting accommodations to them. *See* City of Malden, Municipal Code § 6.08.050.D. The ordinance provides penalties for violations of the ordinance by the owner or operator. *See id.* But it does not restrict the actions of guests whatsoever. *Id.* In other words, Mr. Tercero Yanes and the others did not violate the ordinance.

Nor do the other facts—e.g., hanging out on a basketball court or having a criminal record—support a conclusion that Mr. Tercero Yanes or the others had committed, were committing, or were about to commit an offense. *See* Exhibit 1 at 7-8; *see also* Exhibit 2 at 17. Lacking such bases to conduct a stop, the officers should not have seized Mr. Tercero Yanes. The Court should therefore suppress the fruits of that seizure, including the purported admissions that Mr. Tercero Yanes and the others made after the officers took their identifications. *See Wong Sun v. United States*, 371 U.S.

471, 485 (1963).

## **CONCLUSION**

For the above stated reasons, Mr. Tercero Yanes respectfully requests that the Court exclude or suppress any purported admissions to being a member of MS-13 that law enforcement attribute to Mr. Tercero Yanes.

                                          Respectfully Submitted,
                                          JONATHAN TERCERO YANES
                                          By and through counsel

Date: November 2, 2020        */s/ Leonard E. Milligan III*
                                          Leonard E. Milligan III
                                          BBO #668836
                                          MILLIGAN RONA DURAN & KING LLC
                                          50 Congress Street, Suite 600
                                          Boston, MA 02109
                                          t. 617.395.9493
                                          lem@mrdklaw.com

## **CERTIFICATE OF SERVICE**

I, Leonard E. Milligan III, hereby certify that this document filed through the ECF system shall be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies shall be sent to those indicated as non-registered participants on November 2, 2020.

*/s/ Leonard E. Milligan III*
Leonard E. Milligan III